974 So.2d 787 (2008)
Judy MABRY, Plaintiff-Appellant,
v.
UNION PARISH SCHOOL BOARD, Defendant-Appellee.
No. 42,856-CA.
Court of Appeal of Louisiana, Second Circuit.
January 16, 2008.
*788 Dollar Laird by Johnny E. Dollar, Monroe, for Appellant.
Rankin, Yeldell & Katz by Stephen J. Katz, for Appellee.
Before GASKINS, CARAWAY and LOLLEY, JJ.
LOLLEY, J.
Judy Mabry appeals a judgment of the Third Judicial District Court, Parish of Union, Louisiana, in favor of the Union Parish School Board. For the following reasons, we affirm the trial court's judgment.

FACTS
Judy Mabry initially was chosen as superintendent of schools by the Union Parish School Board ("School Board") under an interim contract from April 12, 2005 through June 30, 2005. Effective July 1, 2005, the School Board extended a subsequent contract to Mabry for another two year period ending June 30, 2007. On February 20, 2007, the School Board met and, upon a motion by Steve Johnson and a vote of 5 to 3 with one abstention, decided not to renew Mabry's contract past June 30, 2007. Those voting not to renew her contract were: Howard Allen, Marcus Whatley, Steve Johnson, Casey Kennedy and Jimmy Hollis. School Board members voting to renew Mabry's contract were Michael Holley, Robert James and Barbara Yarborough. John Ellis abstained from voting.
In response to the vote not to renew her contract, Mabry filed suit on April 5, 2007, in the trial court seeking a writ of mandamus, declaratory judgment, civil penalties, and attorney fees. She requested that the trial court nullify the action by the School Board, claiming that the School Board had circumvented La. R.S. 42:4.1 et seq., requiring public bodies to conduct public meetings (the "Open Meetings Law"). Mabry claimed that prior to the meeting and the vote on Mabry's contract, various School Board members had privately discussed Mabry's contract, and the "votes" not to renew her contract had been gathered. Thus, as alleged by Mabry, when the meeting was called on February 20th, there was no public deliberation by the *789 School Board on the issue. Mabry maintains that she had inherited a financially failing school system, suggesting that she was made the scapegoat for the financial situation the school system was in. The action at the trial court proceeded in a summary proceeding, and the trial court issued its ruling and entered judgment in favor of the School Board on May 24, 2007. This appeal by Mabry ensued.

DISCUSSION
On appeal, Mabry raises one assignment of error. She argues that the trial court erred in not finding that the School Board had violated the Open Meetings Law. Despite the trial court's findings, Mabry urges that the School Board members controverted the law by discussing and deciding the issue of her contract prior to the February 20th meeting. We disagree.
Louisiana's Open Meetings Law is contained in La. R.S. 42:4.1, which provides:
A. It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. Toward this end, the provisions of R.S. 42:4.1 through 10 shall be construed liberally.
B. Further, to advance this policy, all public bodies shall post a copy of R.S. 42:4.1 through 13.
Section 4.2 of the statute contains several important definitions, most specifically, the definition of the word "meeting" as the:
. . . convening of a quorum of a public body to deliberate or act on a matter over which the public body has supervision, control, jurisdiction, or advisory power. It shall also mean the convening of a public body by a public body or by another public official to receive information regarding a matter over which the public body has supervision, control, jurisdiction or advisory power.
Of direct relevance to the facts at hand, although not referred to by the trial court or the litigants, is Section 4.2(B), which provides that: "The provisions of R.S. 42:4.1 through R.S. 42:12 shall not apply to chance meetings or social gatherings of members of `a public body at which there is no vote or other action taken, including formal or informal polling of the members." As stated in Op.Atty.Gen. No. 77-224, Feb. 8, 1977, "every casual encounter at which members of a governing body discuss official business is not subject to the Open Meetings Law."
Here, we have evidence of individual telephone conversations between some board members that may or may not have addressed the issue of Mabry's contract renewal. Certainly there was no "walking quorum" scenario as suggested by Mabry. As described in Op.Atty.Gen. No. 90-349, July 26, 1990, a "walking quorum" is a meeting of a public body where different members leave the meeting and different members enter the meeting so that while an actual quorum is never physically present an actual quorum during the course of the meeting participates in the discussion. Other than a casual pizza dinner shared by Johnson and Holley, there was no evidence of a physical gathering of any group of the board members, let alone a quorum of the School Board, where Mabry's contract renewal was discussed and/or agreed upon; thus the potential for a "walking quorum" did not exist in this case.
What occurred here was casual telephone encounters where several board members individually and separately discussed the situation regarding Mabry's employment contract. Generally, in our *790 view, informal discussions between public officials would have to reach a much more structured level with secretive binding force on at least a quorum of the membership before the Open Meetings Law would be implicatedthere was no evidence of such in this case. Moreover, we find that the informal exchange of ideas and opinions preliminary to a meeting of elected officials is important for the issues of agenda setting and compromise that make a deliberative body function efficiently. For one member to have a phone conversation with another, wherein opinions and thoughts on a topic are expressed, does not mean or create a presumption that those two parties' views will be fixed in stone in solidarity before the public meeting. In fact, that is what the testimony, as would be expected, shows in this case. As Allen testified, one board member cannot always count on how another board member might vote on any issueit is obviously not unheard of for someone to change their mind. Further evidence of a wavering mind in this particular case is the lengthy pause after Johnson's motion was made, until Hollis finally seconded the motion. Here, the evidence showed the possibility for open discussion, public input, and open political argument, even if some board members had informally considered the issue beforehand. Finally, a court cannot be in the business of measuring the length of time and content of the discussion of a proposal at a public meeting to somehow circumstantially divine a prior done deal.
In the case sub judice, the trial court, in its written ruling, painstakingly reviewed in great detail the pertinent facts and circumstances. It correctly noted the burden of proof that Mabry carried in her case against the School Boardi.e., a preponderance of the evidence. Other than the meal between Johnson (who voted not to renew) and Holley (who did not), there was no evidence of a prior physical meeting including any group of board members. We conclude that the trial court was not in error in determining that Mabry's evidence fell short of proving by a preponderance that the Open Meetings Law had been violated, primarily because the evidence showed only casual and separate conversations by individual board members, even if the conversations centered around an issue to be addressed ultimately by the entire School Board.

CONCLUSION
For the foregoing reasons, the judgment of the trial court in favor of the Union Parish School Board is affirmed. All costs of this matter are assessed to Judy Mabry.
AFFIRMED.